UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DONALD ZEDANOVICH,
                                              Plaintiff,
         v.                                                              3:06-CV-1403
                                                                          (LEK/GJD)
COMMISSIONER OF SOCIAL SECURITY,
                                              Defendant.
_____

PETER A. GORTON, ESQ., for Plaintiff
KAREN T. CALLAHAN, Special Asst. U.S. Attorney for Defendant

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).  This case has proceeded in accordance with General Order 18.

## PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on December 20, 2003 claiming disability since February 17, 1998.  (Administrative Transcript ("T."), 54-56).  As stated by the Administrative Law Judge ("ALJ") on page two of his decision (T. 16), plaintiff had filed a prior application for disability insurance benefits on January 31, 1999.  That claim was denied on April 26, 1999, and was not appealed.  (T. 16).

Plaintiff's 2003 application was initially denied.  Plaintiff requested a hearing

before an ALJ. The hearing was held on November 17, 2004. (T. 305-22). Plaintiff testified at the hearing. Although a Vocational Expert ("VE") was present at the hearing, the Vocational Expert did not testify.

In a decision dated October 25, 2005, the ALJ found that plaintiff was not disabled from February 17, 1998 through December 31, 2003, the date that plaintiff was last insured for purposes of the Social Security Act. (T. 15-25). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on September 20, 2006. (T. 5-7).

## CONTENTIONS

The plaintiff makes the following claims:

(1) The ALJ erred in failing to call a Vocational Expert (Plaintiff's Brief (Dkt. No. 13) ("Brief"), 3);

(2) The ALJ erred in failing to call a medical expert (Brief, 5);

(3) The ALJ did not properly consider plaintiff's credibility (Brief, 7);

(4) The ALJ erred in failing to consider the side effects of plaintiff's medication (Brief, 10);

(5) The ALJ did not properly consider plaintiff's obesity (Brief, 10);

(6) The ALJ erred in ignoring the opinion of plaintiff's treating physician (Brief, 11);

(7) The ALJ erred in not finding that plaintiff's medical conditions were severe, and in not considering the combined effects of all impairments (Brief, 12).

## TESTIMONY AND NON-MEDICAL FACTS

Plaintiff was 46 years old at the time of the ALJ Hearing in 2004. Plaintiff testified that he completed the ninth grade, but did not complete high school.[1] During 1976, plaintiff was operating a motorcycle and was involved in a serious accident requiring many surgical procedures during the late 1970's and 1980's. (T. 251-61). Plaintiff's work history records show that in 1989, he began working as a carpenter building homes for approximately two years. (T. 93). Plaintiff then worked as a building maintenance technician for approximately seven years. According to plaintiff, his work as a maintenance technician involved remodeling of all types, and also involved work in a machine shop, using all different types of tools. (T. 94, 71). According to plaintiff, he was a supervisor and was a "lead" worker at McIntosh Labs where he was a maintenance technician. (T. 71).

On February 17, 1998, plaintiff slipped and fell at work injuring his left ankle and left knee. (T. 248). After this 1998 accident, plaintiff never returned to work. (T. 313). Plaintiff testified that he has severe pain in both of his knees, swelling, difficulty walking, and difficulties with his left hand. (T. 310-12). According to plaintiff, his pain is so severe that he is barely able to get around his house, and although his medications relieve his pain, they do not increase his capacity to sit or stand for any length of time. (T. 314). In addition, plaintiff stated that the side

---

[1] There is some contrary evidence about plaintiff's education as stated by the ALJ. (T. 24).

3

effects from his medications make him very groggy and unstable on his feet. (T. 315).

## MEDICAL EVIDENCE

Dr. John Brosnan, an orthopedic surgeon, treated plaintiff for more than twenty years between 1977 and 1998. (T. 222-60). Dr. Brosnan treated plaintiff for the injuries following plaintiff's motorcycle accident (T. 250-61), and then treated plaintiff mainly for his left knee and ankle injuries. (T. 223-48). Dr. Brosnan examined several MRI test results during 1998, and concluded that plaintiff had a chronic sprain in his left knee, together with degenerative joint disease in that knee. Plaintiff also had a right ankle sprain and a wrist fracture from a fall off a ladder. (T. 257). During July 1997, plaintiff had surgery to correct a chronic ulcer at the site of a previous fracture. (T. 120-25).

During Dr. Brosnan's treatment in the late 1980's and 1990's, he found plaintiff "unable to return to work" and stated so in the records on several occasions during 1998 and 1999. (*See* T. 236, 237, 239, 241, and 242). Dr. Brosnan was filing reports for plaintiff's workers' compensation benefits.

Plaintiff's present application does not contain any medical records from the years 2000 through 2002. Plaintiff's medical records appear to begin again during late 2003[2] when plaintiff was treated by Dr. Kristen Robillard for drug dependence.

---

[2] As stated above, the issue is whether plaintiff met the requirements for disability before December 31, 2003, the date that he was last insured for purposes of Social Security.

4

(T. 152-53). Plaintiff was hospitalized for approximately two weeks at United Health Service Hospitals. (T. 153). During late 2003, plaintiff was diagnosed with diabetes and treated by Dr. Robillard. (T. 146-47). Approximately one month later in December 2003, plaintiff was treated by Dr. Robillard for a dog bite, and recovered without any complications. (T. 127-40).

Plaintiff continued treatment with United Health Service Hospitals during 2004, and also had a consultation with a gastroenterologist, Dr. Hassig. Dr. Hassig reviewed many laboratory tests and concluded that plaintiff had Hepatitis C, but it was very mild and plaintiff was not showing any signs or symptoms from this disease. (T. 206-18). Plaintiff also consulted with an ENT specialist who performed surgery on plaintiff's vocal chord and repaired a deviated septum during March 2004. (T. 170-75). In May of 2004, an examination of plaintiff's hearing showed that plaintiff's hearing was normal with a slight hearing loss in his left ear. (T. 180-81).

During late April 2004, plaintiff began treatment with Dr. Choi. Dr. Choi's notes are very specific and note that plaintiff talked for 45 minutes about his knee, claiming that he was unable to walk. (T. 190). Dr. Choi stated that plaintiff is ***not really taking any medicine*** for his knee pain, and ***is trying to look for disability*** secondary to his knee pain. (T. 190). Dr. Choi noted that plaintiff was complaining of increased knee pain and swelling, but never followed up with any orthopedic

5

examinations, and did not want to return to Dr. Brosnan. (T. 190). Dr. Choi prescribed Vioxx and Ultram for pain control. Dr. Choi stated that plaintiff would need x-rays, an MRI, and a consultation with an orthopedic physician. (T. 190).

Plaintiff visited Dr. Choi during May 2004 (T. 185-87) for plaintiff's knee pain. Again, Dr. Choi's notes specifically mention that plaintiff was seeking a review of his condition for disability purposes, and Dr. Choi found that plaintiff was able to sit six hours, lift ten pounds occasionally, and stand or walk for less than two hours. (T. 186). Dr. Choi diagnosed degenerative disease in plaintiff's knees on June 22, 2004. (T. 186). During August 2004, plaintiff returned to Dr. Choi and was concerned about the liver biopsy which was being reviewed by Dr. Hassig. (T. 187). Plaintiff was also concerned about his disability application. Dr. Choi's detailed notes state as follows

> 2. Disability. We had a real long discussion about disability. I told him that I did not say he was completely disabled. He has a full mental capacity, and was able to sit and probably do paperwork or at least phone messages. He obviously cannot do any manual labor or any kind of lifting, but other things he should be able to do and that was why we did give him the limited disability on the form. I told him he is not completely disabled since he can walk around and he actually does odd jobs here and there and can continue to do so at this time.

(T. 187). It is clear, therefore, that as late as May 13, 2004, Dr. Choi, a treating physician, found that plaintiff was *not* "completely disabled," and was mentally and physically capable of sitting and doing paperwork or other sedentary work. (T. 187).

The records show that plaintiff was prescribed the medication Bextra for his

left knee pain, and plaintiff reported that his knee was better after using that medication. (T. 189). In June of 2004, plaintiff was examined by Dr. Robert Capecci, who examined plaintiff's left knee and found tenderness and palpable crepitus, but no instability. (T. 215). Dr. Capecci stated that x-rays showed severe post-trauma degenerative arthritis. *Id.* Two months later, Dr. Capecci repeated cortisone injections to plaintiff's knees, and an x-ray done at that time showed small irregular calcification plus small bony spurs in plaintiff's left knee but no other bony abnormalities. (T. 213-14).

During mid-December 2004 and mid-January 2005, plaintiff was examined by two different psychologists for mental status examinations. The mid-December examination was by Ph.D. Randy Valerie Specterman, who performed personality testing and concluded that there was nothing abnormal about plaintiff's mental status, and plaintiff had no significant mental impairments. (T. 263-69). She concluded that plaintiff was functioning overall within the normal range of function. (T. 269). Dr. Specterman completed a mental residual functional capacity evaluation, and found that plaintiff had marked impairments in two categories and moderate impairments in two categories. Plaintiff had marked impairments in the ability to interact with the public and supervisors, and in responding to work pressures. (T. 271-72).

Psychologist Christine Ransom also performed a psychiatric evaluation and a

7

Mental Status Evaluation and found no moderate or marked impairments, but did find that plaintiff suffered from mild depression and had a borderline IQ with a score of 77. (T. 273-75). Plaintiff's full scale IQ was 77, his verbal IQ was 74, and he had a performance IQ of 84. Dr. Ransom concluded that plaintiff can understand and follow simple directions and perform simple tasks. (T. 273).

The court notes in neither of the reports of Dr. Specterman or Dr. Ransom is it noted that plaintiff worked as a maintenance technician, and according to plaintiff, supervised other individuals. Dr. Specterman performed extensive testing with Rorschach figures and drew conclusions based in part on plaintiff's responses to those tests. Dr. Ransom's tests included a written intelligence quotient test (the Wechsler Adult Intelligence Scale). (T. 277).

The ALJ notified plaintiff's counsel that, in this case, the ALJ was including several exhibits from plaintiff's prior 1999 application. One of those exhibits was a Residual Functional Capacity ("RFC") assessment prepared by Dr. Sury Putcha. On April 19, 1999, Dr. Putcha found after reviewing plaintiff's medical evidence, that plaintiff could occasionally lift ten pounds, frequently lift less than ten pounds, stand for two hours, and sit for six hours. (T. 296). Dr. Putcha did not find any postural limitations. (T. 296-302).

## DISCUSSION

**1.     <u>Disability Standard</u>**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; ... .

9

> Assuming the claimant does not have listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir. 1984).

## 2.   Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the

decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

3. **<u>Treating Physician Rule</u>**

While a treating physician's opinion is not binding on the Commissioner, the opinion must be given controlling weight when it is well supported by medical findings and ***not inconsistent with other substantial evidence***. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 416.927(d). If the treating physician's opinion is contradicted by other substantial evidence, the ALJ is ***not***

11

required to give the opinion controlling weight. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must, however, properly analyze the reasons that the report is rejected. *Id.* An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

In this case, the court finds that the ALJ's decision that plaintiff was not disabled prior to December of 2003 is in conformance with the treating physician rule. Plaintiff's treating physicians, including Dr. Mike Choi, Dr. John Brosnan, Dr. Robillard, and Dr. Capecci did not find plaintiff incapable of performing any type of work. Dr. Choi specifically stated that plaintiff was not completely disabled. A much earlier note in the record also appears to state that plaintiff was told he was able to work but did not agree with that opinion. (T. 261). The note, which was written in 1977, says in effect, "I told plaintiff he can work, but plaintiff became argumentative and hung up the telephone, stating that his lawyer would be contacting me." (T. 261). It is unclear precisely who wrote that note, but it is clear that plaintiff is and has been strongly motivated to be declared disabled despite the opinions of his treating physicians.

**4.     Credibility**

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*,

No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. *See* 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged...." 20 C.F.R. § 404.1529(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. *Id.* § 404.1529(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id.* § 404.1529(c)(3).

13

In this case, plaintiff argues that the side effects of his medications were not properly considered by the ALJ. This court finds no basis for that argument. Although plaintiff's testimony at the hearing included many statements about side effects from his medications, the medical records ***do not show any complaints*** about side effects from medications. Plaintiff never complained to Dr. Choi during August 2004 about any side effects of medication. (T. 187). There is no evidence in the record to support plaintiff's argument in this regard.

As stated above, with reference to Dr. Choi's notes, it is clear that plaintiff is strongly motivated and has been seeking declaration of disability despite findings by his treating physicians that he is not disabled. Plaintiff's testimony at the hearing is very different from the medical reports from several different treating physicians. With respect to plaintiff's testimony about depression and his statements to the two psychologists in late December 2004 and early January 2005, there is very little, if any, support for plaintiff's claim that he has been depressed and that the ALJ should have considered this as another impairment. The ALJ's assessment of plaintiff's credibility is supported by substantial evidence.

### 5. Combination of Impairments

It is well-settled that the combined effect of all plaintiff's impairments must be considered in determining disability. *Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995). The ALJ must evaluate the combined effect of plaintiff's impairments on her ability to work, "***regardless of whether every impairment is severe.***" *Id.* (citing *inter alia DeLeon v. Secretary of HHS*, 734 F.2d 930, 937 (2d Cir. 1984)). According to

the Social Security Rulings, an assessment of residual functional capacity (RFC) takes into account functional limitations and restrictions resulting from the individual's medically determinable impairment or combination of impairments, whether or not all of those impairments are "severe." *See Johnson v. Astrue*, 2008 U.S. Dist. LEXIS 91752, *25-26 (E.D.N.Y. Sept. 8, 2008)(citing *inter alia* Social Security Ruling (SSR) 96-8p; 20 C.F.R. § 404.1545(a)(2)).

Plaintiff argues that the ALJ failed to consider his obesity in combination with his knee and ankle problems. Plaintiff also claims that the ALJ failed to consider plaintiff's prior injury to his left wrist and plaintiff's prior broken legs. There is no support for plaintiff's argument. The ALJ specifically considered "the cummulative effects of obesity" in conjunction with his determination that plaintiff's impairments did not meet the severity of a listed impairment. (T. 21). The ALJ also considered plaintiff's obesity at the final step of the analysis when the ALJ found that plaintiff's obesity would not impact upon plaintiff's ability to perform sedentary work.

With respect to plaintiff's prior injuries, the ALJ did specifically consider that plaintiff had "multiple fractures" in a 1976 motor vehicle accident, but that his prior injuries caused "no more than minimal vocational limitations ***during the period in issue***." (T. 19). The ALJ found that these prior injuries did not constitute a "severe" impairments. *Id.* The court would point out that there are two issues present. First, whether the prior injuries were "severe impairments," and second whether, if those injuries were not severe, whether the ALJ properly considered them in combination with plaintiff's severe impairments.

There is substantial evidence in the record to support the ALJ's conclusion in this regard. The regulations define a "non-severe" impairment as one that does not *significantly limit* [the plaintiff's] physical or mental abilities to do basic work activities." 20 C.F.R. §§ 404.1521(a); 416.921(a). Basic work activities are defined as "abilities and aptitudes necessary to do most jobs." *Id.* §§ 404.1521(b); 416.921(b). These abilities are further defined as physical functions, including the capacity for seeing, hearing, and speaking. *Id.* § 404.1521(b)(1); 416.921(b)(1).

These basic work activities also include mental capacities, such as understanding, carrying out, and remembering simple instructions as well as the use of judgment. *Id.* §§ 404.1521(b)(3), (b)(4); 416.921(b)(3), (b)(4). Capacities for seeing, hearing, and speaking are also considered basic work activities as are other mental capabilities such as responding appropriately to supervision, co-workers, and usual work situations, and dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(2), (b)(5), (b)(6); 416.921(b)(2), (b)(5), (b)(6).

A finding of not severe may be made if the medical evidence establishes only a "slight abnormality" that would have "no more than a minimal effect on an individual's ability to work. *Rosario v. Apfel*, 1999 U.S. Dist. LEXIS 5621, *14 (E.D.N.Y. Mar. 19, 1999)(quotations omitted). In *Dixon*, the Second Circuit noted that the "threshold severity test" should only be used as a screening device to eliminate *de minimis* claims. 54 F.3d 1030. The problem in *Dixon*, however, was the use of the "severity" test to deny claims without consideration of vocational factors. *Id*. at 1031. Here, the ALJ did not dismiss plaintiff's claim because he did not have a

16

"severe" impairment, rather the ALJ made a full analysis of plaintiff's impairments, together with vocational factors.

Plaintiff's accident was in 1976. He was clearly able to work with all the injuries that he experienced as a result of that accident. The ALJ then stated that during the period in question, these injuries posed "no more than minimal vocational limitations." (T. 19). The ALJ's statement does consider the prior injuries in question and finds that they did not pose additional vocational limitations during the relevant time prior to 2003. The ALJ found that plaintiff is restricted to sedentary work because of the combination of his severe impairments. The ALJ's findings are supported by substantial evidence, including statements of plaintiff's own treating physician, who emphasized that plaintiff was not "totally disabled" because he could perform sedentary work, notwithstanding the combination of his impairments. (T. 187).

## 6.   Vocational Expert

If a plaintiff's non-exertional impairments "significantly limit the range of work" permitted by the plaintiff's exertional limitations, then the ALJ may not use the Medical-Vocational Guidelines exclusively to determine whether plaintiff is disabled. *Bapp v. Bowen*, 802 F.2d 601, 606 (2d Cir. 1986). If the plaintiff's range of work is significantly limited by his non-exertional impairments, then the ALJ must present the testimony of a vocational expert or other similar evidence regarding the availability of other work in the national economy that plaintiff can perform. *Id.* A vocational expert may provide testimony regarding the existence of jobs in the

national economy and whether a particular claimant may be able to perform any of those jobs given his or her functional limitations. *See Rautio v. Bowen*, 862 F.2d 176, 180 (8th Cir. 1988); *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983).

In this case, plaintiff argues that the ALJ erred in not utilizing a Vocational Expert (VE). As stated above, a VE is not required unless the ALJ finds that plaintiff's non-exertional impairments significantly limit the work permitted by plaintiff's exertional limitations. In this case, the ALJ carefully analyzed plaintiff's non-exertional impairments and determined that there was no ***significant*** limitation in the range of unskilled sedentary work that plaintiff could perform. (T. 21-25). The ALJ then used the Medical Vocational Guidelines[3] to determine that plaintiff was not disabled prior to the expiration of his insured status in December of 2003. The ALJ's findings are supported by substantial evidence.

## 7.  Use of a Medical Expert

Plaintiff argues that the ALJ was required to call a medical expert for an expert opinion on the onset date of plaintiff's actual impairments. Plaintiff misreads the ALJ's opinion by arguing (Brief, 5) that the ALJ "virtually conceded that the claimant was disabled." (T. 18). This court does not read the ALJ's opinion to state that the plaintiff is disabled since the ALJ clearly conditions his language with the use of "may" without making any finding about whether plaintiff's condition has deteriorated. The ALJ simply observed that even if plaintiff's condition ***may*** have

---

[3] 20 C.F.R. Part 404, Subpt. P. App. 2, §§ 201.19, 201.20. (RFC for sedentary work).

18

significantly deteriorated and *may* in fact be disabling (T. 18), his condition in 2005 is not relevant since plaintiff's last date of insurance for Social Security Disability Insurance purposes was December 31, 2003.

Plaintiff also argues that his hearing loss was not considered by the ALJ. (Brief, 6). The audiological evaluation performed in May *2004* found that the hearing in plaintiff's right ear was normal, and there was only a slight hearing loss in plaintiff's left ear. (T. 180). While plaintiff argues that this slight hearing loss "creates vocational difficulties" (Brief, 6), there is no support for this statement by reference to any medical opinions, and there was no further treatment necessary after that evaluation. Finally, this condition was diagnosed well after plaintiff's last insured date of December 31, 2003.

Plaintiff argues that his diabetes was not considered properly by the ALJ because the ALJ did not consider whether it met a listing. Plaintiff has not shown that his diabetes meets any listing in the regulations, and the medical records do not support plaintiff's arguments that his diabetes had any type of effect on his ability to function. As stated in the medical records, his diabetes in February *2004* was under good control. Plaintiff had normal readings when his blood sugar was tested. (T. 153-55).

Plaintiff argues that his back pain and hand and leg pain were so severe that it was very difficult to ambulate, and that he had to rest every fifteen minutes of every hour. (Brief, 7). The record does not support these assertions or plaintiff's testimony since there were never any complaints to physicians about these difficulties, and

19

there was no treatment for any of these alleged problems. Thus, there is substantial evidence in the record to support the ALJ's finding that plaintiff was not disabled prior to December 31, 2003.

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED**, that the decision of the Commissioner be **AFFIRMED** and the Complaint (Dkt. No. 1) be **DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 6, 2009

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge